**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 06 - cv - 01101 - LTB - MJW

COLORADO GAS COMPRESSION, INC.,
and JAMES F. HOLMES,

Petitioners,

v.

UNITED STATES OF AMERICA,

Respondent.

_____

**Order**
_____

Respondent United States of America ("the Government") moves for summary denial of the Petition by Colorado Gas Compression, Inc. ("Colorado Gas") and James Holmes ("Holmes") to quash the Internal Revenue Service ("IRS") summons issued to Holmes, and to enforce the summons. For the reasons stated below the Government's motion is GRANTED.

**I.   BACKGROUND**

Colorado Gas is a corporation based in Longmont, Colorado. It has been in an ongoing dispute with the IRS over its tax liabilities for the years 1994, 1995 and 1996. While the record does not contain precise details of this dispute, it has been before the U.S. Tax Court and the Tenth Circuit Court of Appeals, and the Government obtained a final judgment against Colorado Gas in the U.S. Tax Court on July 20, 2005. The parties do not dispute that Colorado Gas owes a liability to the Government for the tax years 1994, 1995 and 1996 of $923,049.00. While the precise legal status of Colorado Gas is also not clear from the record, the petitioners state that

Colorado Gas ceased doing business on or about December 31, 2003. The record contains a letter dated June 3, 2004 from James Laurion, accountant for Colorado Gas, stating that Colorado Gas "has no assets to satisfy the assessment, while awaiting the final judgment of the Courts." Holmes, prior to Colorado Gas' demise, was its sole shareholder and CEO.

On June 16, 2006 IRS agent Todd Hawk ("Hawk") served two summonses on Holmes. The first summons, which Holmes does not contest, sought records from Holmes in his capacity as custodian of records for Colorado Gas (the "Colorado Gas Summons"). The second summons, the subject of this lawsuit, seeks records from Holmes in his capacity as transferee of Colorado Gas (the "Summons"). The Summons seeks information and documents from Holmes from January 2003 to April 2006 covering essentially all of his personal financial transactions, including "bank statements, cancelled checks, passbooks, and records of certificates of deposit," as well as "all records or documents regarding stocks and bonds, deeds or contracts regarding real property, current registration certificates for motor vehicles and life or health insurance policies currently in force. . . " On June 8, 2006 Holmes filed this petition to quash the Summons. On August 24, 2006 the Government moved for summary denial of Holmes' petition to quash and petitioned this Court to enforce the Summons.

## II.  DISCUSSION

Holmes contends that the Summons is invalid because it lacks a legitimate purpose, because the IRS already possesses these records and because the Summons is over-broad. The Government contends that this Court lacks subject matter jurisdiction over Holmes' petition to quash because the Summons was issued to him, rather than to a third party. The Government also argues that the Summons satisfies all legal requirements, so Holmes' petition should be denied

2

and this Court should issue an Order to enforce the Summons.

A.   Subject Matter Jurisdiction

The Government argues that this Court lacks subject matter jurisdiction to consider Holmes' petition. Holmes brings this petition under 26 U.S.C. § 7609(b)(2), which grants an individual receiving a summons the right to file a petition to quash a summons. Section 7609(h) confers on federal district courts jurisdiction over petitions to quash a summons. However, the right to petition to quash a summons does not extend to a summons "served on the person with respect to whose liability the summons is issued." 7609(c)(2)(A). *See also Tabar v United States,* 142 F.R.D. 343, 344 (D. Utah 1992). The Government asserts that the right to petition to quash applies only to a taxpayer challenging a summons against a third party for records involving the taxpayer, but not to a situation like this, where Holmes challenges his own summons.

Holmes responds that the IRS issued the Summons to him as a third party, as transferee of Colorado Gas. Holmes cites the fact that the Summons states that it is "In the Matter of James Holmes as Transferee of Colorado Gas Compression, Inc.," and that the underlying dispute concerns Colorado Gas corporate tax returns for the years 1994, 1995 and 1996. Additionally, he points out that the Summons itself contains language referring to him as a "Third Party Recipient of an IRS Summons" and that Hawk advised him on how to file a petition to quash the Summons. Moreover, the IRS has not yet formally determined that Holmes is the transferee of Colorado Gas. Since his only tie to the underlying litigation is as the transferee of Colorado Gas, and since the underlying matter concerns Colorado Gas obligations, the object of the Summons is legally a separate entity from Holmes as an individual.

This argument is unpersuasive. First, it is legally irrelevant for the purposes of the

3

Summons that the IRS has not yet definitively determined that Holmes is the transferee for Colorado Gas. The jurisdictional issue is whether the IRS seeks information from Holmes in his personal capacity or in some capacity related to Colorado Gas. The specific information requested in the Summons is instructive. The Summons seeks Holmes' personal records and information. This contrasts with the Colorado Gas corporate records the IRS seeks in the Colorado Gas Summons (also issued to Holmes, which he does not contest.) Holmes' argument – that he is necessarily a third party since the IRS has not officially determined that he is the transferee – is not supported by case law or by logic. The Summons was issued to Holmes to gather Holmes' personal information related to his own status as a taxpayer. This renders him unable to invoke the rights of a third party challenger.

Additionally, the language in the IRS summons form describing the rights of Third Party recipients does not help Holmes. The summons form, form 2039, is a common form, which the IRS apparently uses for third party and non-third party recipients alike. This same form was used for the Colorado Gas Summons. It is unclear from the Record why the IRS uses a summons form describing the rights of third party challengers even when the party summonsed and the third party are the same person. But this ambiguity in the IRS forms does not overcome the clear statutory language of § 7609. Holmes was summonsed in his individual capacity, and thus cannot file a petition to quash.

B.   The Validity of the Summons

    1.   The *Powell* Factors

Assuming *arguendo* that Holmes may challenge the Summons, Holmes argues that the Summons fails the four-part test established by the Supreme Court for a valid IRS summons. In

4

order for a summons to be valid, the IRS must make out a *prima facie* case that (1) the investigation has a legitimate purpose; (2) the summonsed materials are relevant to that purpose; (3) the information sought is not already within the IRS's possession; and (4) the IRS has followed the appropriate procedural steps. *United States v. Powell,* 379 U.S. 48, 57-58 (1964). The burden on the Government here is "a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *U.S. v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1443 (10th Cir. 1985). "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement." *Id.* (Internal citations omitted.)

Holmes argues that the Summons fails the first and third prongs of *Powell,* but does not seriously dispute the second and fourth prongs of *Powell*.

Holmes contends first that the Summons lacks a legitimate purpose. Holmes argues that the IRS issued the Summons against him individually as the transferee for Colorado Gas. 26 U.S.C. § 6901(a) requires that transferee liability be assessed using the same procedural requirements as any other assessment, which includes 90-day notice of any potential deficiency. 26 U.S.C. § 6212(a). It is undisputed that Holmes has received no notice of any specific deficiency, and that the IRS has not concluded through its own process nor obtained a judgment that Holmes is the legal transferee for Colorado Gas. Therefore, Holmes asserts, the Summons lacks a valid purpose and fails the first prong of *Powell*.

This argument is unpersuasive. Section 6901 addresses the circumstances under which the IRS may assess a tax liability against an individual as a transferee, but does not address IRS powers to issue a summons. The relevant statutory authority for summonses is in 26 U.S.C. §

5

7602(a), which authorizes the IRS to issue a summons

> "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability."

This statutory authority is, necessarily, broad. The Supreme Court, comparing IRS authority to that of a Grand Jury, has stated that the IRS "may investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell,* 379 U.S. at 57. The IRS may seek information that "<u>may be relevant</u> to a proper purpose." *U.S. v. Southwestern Bank and Trust Co.,* 693 F.2d 994, 995 (10th Cir. 1982). (Emphasis in original.) Moreover, material is relevant if it "might throw light on the correctness of a taxpayer's returns." *Id.* Congress intended the IRS to "obtain items of even <u>potential</u> relevance to an ongoing investigation." *U.S. v. Arthur Young & Co.,* 465 U.S. 805, 814 (1984). (Emphasis in original). This is because "The (IRS) can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized." *Id.*

Under this broad discretion afforded the IRS, the Summons is valid. The IRS has provided Agent Hawk's affidavit stating that the material sought in the Summons is necessary to "aid in determining the federal income tax transferee liability of James F. Holmes for tax years 1994, 1995 and 1996, and to determine his solvency and ability to pay for Colorado Gas Compression Inc's judicially-determined corporate income tax liability for tax years 1994, 1995 and 1996." While Holmes contends such a summons is improper absent a determination that he actually has transferee liability, Holmes provides no authority for this proposition. Holmes' argument also

6

contradicts the plain language of the statute, which authorizes summonses to ascertain whether a taxpayer has transferee liability.

Holmes also argues that the purported purpose of the Summons is illogical, since his personal information from 2003 to 2006 cannot be relevant to the tax liability of Colorado Gas from 1994 to 1996. But Holmes was the sole shareholder and CEO of Colorado Gas until its demise in late 2003. The IRS has reason to believe that Colorado Gas may have distributed is assets to Holmes up until 2003, while Colorado Gas was contesting the IRS tax assessments. Holmes' information from 2003 to 2006 therefore might shed light on whether he received distributions from Colorado Gas that might be subject to a judgment or make him Colorado Gas's transferee.   I conclude that the IRS summons to Holmes had a legitimate purpose within the meaning of *Powell* and of 26 U.S.C. § 7602(a).

Holmes argues additionally that the Summons violates the third *Powell* factor because the IRS already possesses the information sought in the Summons. But Agent Hawk's affidavit states that the records sought in the Summons are not already in the possession of the IRS, and in fact, Holmes does not seriously dispute this point. Rather, he argues that these records are not logically necessary to assess his transferee liability. As explained above, Holmes' personal records may "shed light" on the question of his transferee liability for Colorado Gas. Since the IRS asserts, and Holmes does not dispute, that the IRS does not already have this information, this element of the *Powell* test is satisfied.

2.      Over-broad

Holmes argues additionally that the Summons is flawed because it is over-broad. "A summons will be deemed unreasonable and unenforceable if it is over-broad and disproportionate

7

Case 1:06-cv-01101-LTB   Document 13   Filed 10/26/06   USDC Colorado   Page 8 of 10

to the end sought." *U.S. v. Coopers & Lybrand*, 550 F.2d 615, 621 (10th Cir. 1977). "The Government cannot go on a 'fishing expedition'" through a taxpayer's records, nor can it engage in a "rambling exploration of a third party's files." *Id.* Over-broad searches for information are especially suspect "where the demand for records is directed not to the taxpayer but to a third party who may have had some dealing with the person under investigation." *Id.*

Here, Holmes was sole owner, shareholder and CEO of Colorado Gas. There is already an outstanding assessment on Colorado Gas, and the IRS is investigating whether Holmes is liable for the outstanding judgment against Colorado Gas as its transferee. The records of Colorado Gas show a distribution to Holmes in 1996 of $1,852, 204. The IRS is investigating whether "the remaining corporate assets were distributed to Holmes between 1996 and 2004," when Colorado Gas stated that it had no assets left to pay its tax liability. In this situation, requesting Holmes' personal financial information from the years 1994 to 1996 is not an overly broad fishing expedition but is relevant to the IRS determination of whether Holmes has successor liability.

    3.    Harassment/Assessing Ability to Pay not a Legitimate Purpose

Finally, Holmes contends that the Summons is invalid because it seeks the information for an improper purpose. The Hawk affidavit states that the purpose of the Summons is to assess whether Holmes has transferee liability, and to "assist in a determination of James F. Holmes' solvency and ability to pay that transferee liability." Holmes argues that assessing his ability to pay the potential transferee liability is an improper purpose. Holmes also asserts that the actual purpose of the Summons is to coerce him into paying Colorado Gas's liability, even though he has not yet been found legally liable for these taxes. Holmes proffers as evidence that on August 8, 2006, Agent Hawk called him and said: "We've got you. If you do not file a power of attorney

8

authorizing someone to act for you as a transferee, we intend to foreclose and seize all of your properties." As discussed above, assessing the potential liability of a taxpayer is a proper purpose for an IRS summons under 7602(a). Holmes argues here, essentially, that the presence of additional, invalid purposes invalidates the Summons.

This argument fails for several reasons. First, it is unclear that these additional purposes are improper. Holmes provides no authority to support his contention that seeking information about solvency absent an assessment is *per se* illegitimate. Additionally, it is unclear how Hawk's purported statement of August 8, 2006 reveals an improper purpose for the Summons. This statement, if true, relates to Holmes' designation of a power of attorney to act for him as transferee. The purported conversation does not address the Summons or its validity. While Hawk's statement, if true, is some evidence of an antagonistic relationship between Hawk and Holmes, it does not show, as Holmes seems to think, that the Summons is suspect. Moreover, Hawk made this purported statement two months after Holmes filed his petition to quash the Summons, so the record contains no evidence of any coercive motive of the IRS at the time Holmes filed his petition.

However, even assuming that the IRS sought this information for multiple purposes, only one of which was valid, Holmes has not met his burden to show that the overall purpose of the Summons is outside of the proper scope of IRS authority. A taxpayer claiming that the IRS issued a summons in order to harass the taxpayer bears the burden to "show the absence of a valid purpose underlying the summons." *U.S. v. Millman,* 822 F.2d 305, 308 (2nd Cir. 1987). While the motive of an agent is relevant to this inquiry, a taxpayer must go further and show that the overall "institutional posture" of the IRS reveals that a summons was not issued in good faith. *Id.*

9

at 308-309. The IRS's mere assertion of a single legitimate motive does not necessarily show good faith, but the onus remains on the taxpayer to show the agency's lack of good faith. *Id.*

Here, Holmes has not met this burden. His evidence consists of his own assertion, without authority, that the IRS may not inquire into ability to pay prior to assessing liability, and a statement by Hawk two months after filing the petition to quash (and almost three months after the issuance of the Summons) that is related to the power of attorney, not to the Summons itself. This is insufficient to show that the IRS is not "honestly pursuing the goals of Section 7602." *U.S. v. LaSalle National Bank,* 437 U.S. 298, 316 (1978).

C.   Order to Enforce the Summons

The IRS moves to enforce the Summons. As discussed above, the IRS has satisfied the first and third prongs of the *Powell* test, and Holmes has not met his burden to show that the IRS has issued the Summons in bad faith. As to the other two prongs of *Powell*, the IRS asserts, and Holmes does not contest, that the materials are relevant to the investigation and that the IRS has followed its own internal administrative procedures. I conclude that the Summons is proper.

It is so Ordered that,

1)   Petitioners' petition to quash the Summons (Docket # 1) is DENIED, and

2)   Respondent's motion for summary denial of petition to quash, and for enforcement of the Summons (Docket #7) is GRANTED.

**DONE and ORDERED,** this   26th   day of October, 2006 at Denver, Colorado.

                                         s/Lewis T. Babcock
                                         United States District Chief Judge